UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY MONK,

        Plaintiff,

v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

        Defendant.
_____/

File No.  1:08-cv-215

HON. ROBERT HOLMES BELL

**O P I N I O N**

Plaintiff Gregory Monk was denied long-term disability benefits under an insurance policy issued to Plaintiff's former employer, State Farm Mutual Insurance Company. Defendant Life Insurance Company of North America is the plan administrator for the policy. In this action, Plaintiff appeals Defendant's decision to deny benefits. Before the Court are: (1) motions to affirm or set aside the administrative decision (Dkt. Nos. 12, 15), and (2) a motion for partial summary judgment filed by Defendant regarding the applicable time period in which benefits are payable, if the Court overturns the decision of the administrator (Dkt. No. 8). The parties have also submitted briefs regarding the standard of review of the administrative record. (Dkt. Nos. 11, 13.) For the reasons stated herein, the Court will affirm the decision of the plan administrator.

**I.**

The Court has jurisdiction over this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, because Plaintiff appeals the denial of benefits under an employer-sponsored group benefit plan. Courts generally review a plan administrator's denial of benefits *de novo*, "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003) (quoting *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001)). The plan at issue requires the claimant to submit "satisfactory proof" of a disability claim. (Dkt. No. 17, R. at 96.) The Sixth Circuit has found that plans with similar language grant discretion to the plan administrator. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998) (citing other cases). Plaintiff concedes that the arbitrary and capricious standard is the appropriate standard of review. (Dkt. No. 11, Pl.'s Br. 2.)

Under the arbitrary and capricious standard, the Court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* (quoting *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). This standard is the "least demanding form of judicial review of administrative action." *Davis*, 887 F.2d at 693

(quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)).  However, while the Court's review under this standard is "extremely deferential," it does not amount to a "rubber stamp" of the administrator's decision.  *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004).

## II.

Plaintiff applied for long-term disability benefits on November 11, 2004.  (R. at 584.)  He described his condition as "Nerve damage to ilionguinal and/or genitofemoral nerves."  (*Id.*)  Plaintiff claimed that his condition started in July 2001, and that he became disabled on October 8, 2001.  (*Id.*)  On December 3, 2004, Defendant sent Plaintiff a letter requesting from Defendant reasons for filing a claim more than 90 days after the date of the loss for which the claim was made.  (R. at 565.)  On January 20, 2005, Defendant sent Plaintiff a letter denying disability benefits based on the pre-existing conditions limitation in the policy.  (R. at 436-40.)  The letter also quoted the provisions in the policy regarding the time period for filing claims and the requirements for establishing a disability.  (*Id.*)  On September 9, 2005, Defendant sent Plaintiff a second denial letter stating that it affirmed the decision to deny benefits based on the pre-existing conditions exclusion, and stating that Plaintiff's documentation did not support evidence of inability to perform an occupation. (R. at 145-48.)  On August 27, 2006, the plan administrator affirmed its decision, and the administrative remedies were thereby exhausted.  (R. at 586-87.)

## III.

On appeal, the Plaintiff challenges only the decision to deny benefits based on the pre-existing conditions limitation in the policy.  Under the policy,

> [t]he Insurance Company will not pay Disability Benefits for any period of Disability caused by or contributed to by, or resulting from, a Pre-Existing Condition.  A "pre-existing condition" means any Injury or Sickness for which the Employee incurred expenses, received medical treatment, care or services including diagnostic measures or, took prescribed drugs or medicines within [the limitations period].

(R. at 97.)  The pre-existing conditions clause applies to any period of disability that begins within the first 12 months of the most recent effective date of the employee's insurance coverage.  Plaintiff apparently concedes that the pre-existing conditions clause applies to Plaintiff's period of disability.  The parties also agree that the pre-existing conditions limitations period ran from March 2, 2001 to June 1, 2001 (the "Limitations Period").  However, Plaintiff disputes that the medical care that he received during the Limitations Period was related to the condition for which he sought benefits.

Plaintiff would like the Court to focus only on the records from two doctor's visits in March 2001.  However, at issue is whether it is possible to offer a "reasoned explanation, based on the evidence" that the period of disability for which Plaintiff sought benefits was "caused by or contributed to by, or resulting from," the condition for which he sought care during the Limitations Period.  The records from these two doctor's visits indicate that patient sought medical treatment during the Limitations Period, but they do not tell the whole story.  To determine whether the administrator's decision was arbitrary and capricious, the Court must consider these records in light of the entire record of Plaintiff's treatment history

4

from prior to and after the Limitations Period, leading up to the date that Plaintiff filed his disability claim.

In October 2000, Plaintiff consulted with a physician at the MSU/KCMS Family Practice Clinic (the "Clinic") regarding a possible vasectomy. (R. at 301.) The physician's notes from the visit indicate that Plaintiff had experienced "no urinary or sexual dysfunction" and had "never had any surgery or trauma to the genital region that [Plaintiff was] aware of." (*Id.*) Plaintiff underwent the vasectomy on January 4, 2001. (*Id.*) At a follow-up visit on January 10, 2001, Plaintiff complained that his "right testicle is more tender than the left" though it was "improving each day". (*Id.* at 300.) He was prescribed pain medication. (*Id.*) On February 2, 2001, Plaintiff returned to the Clinic complaining of "persistent and intractable right testicular pain." (*Id.* at 299.) The doctor prescribed antibiotics and further pain medication. (*Id.*) Plaintiff returned to the Clinic again on February 14, 2001, complaining of "severe" and "persistent right testicular pain" despite high doses of pain medication. (*Id.* at 298.) The physician noted a "palpable, extremely tender mass at the distal cut of the vasectomy" but "[n]o tenderness to palpation of the testicle or epididymis." (*Id.*) The physician assessed Plaintiff's condition as "[p]ost vasectomy pain, likely associated with spermatocele." (*Id.*) Dr. Alkema's notes from February 28, 2001 note that Plaintiff is "not doing very well" and that Plaintiff is experiencing a "Bad Ache R testicle." (*Id.* at 507.)

On March 7, 2001, during the Limitations Period, Dr. Alkema removed "soft tissue" from a "pain lesion [at the] previous vasectomy site." (*Id.* at 319, 507.) Plaintiff returned

5

to the Clinic on March 29, 2001. (*Id.* at 297.) At the Clinic, Dr. Atkinson noted that Plaintiff "had a spermatocele with significant pain following his vasectomy . . . [but] is significantly improved at this time." (*Id.*) Dr. Atkinson noted that Plaintiff was still "tender" and was taking Vicodin and Motrin; he prescribed additional Vicodin. (*Id.*) Plaintiff continued to refill prescriptions for pain medication throughout the Limitations Period until as late as May 2001. (*Id.* at 512, 544.)

Plaintiff visited the Clinic again on June 28, 2001, to obtain prescription refills for pain medication. (*Id.* at 296.) Dr. Atkinson noted that Plaintiff had "significant pain following his vasectomy" and continued to take medication for pain that is "gradually resolving." (*Id.*) A follow-up visit to the Clinic in August 2001 noted "recurrence of the pain" in the right testicle. (*Id.* at 295.)

Plaintiff saw Dr. Blix, a urologist, for his ongoing pain in September 2001. (*Id.* at 171.) Dr. Blix found a small granuloma in Plaintiff's right epididymis and partially removed the epididymis in October 2001. (*Id.* at 172-73.) In November 2001, Plaintiff returned to see Dr. Blix because he continued to experience "right testicular pain." (*Id.* at 175.) Dr. Blix referred Plaintiff for a nerve block, noting that Plaintiff "may still be having stimulus along the *ileal inguinal nerve* due to chronic irritation." (*Id.* (emphasis added).)

Plaintiff underwent a series of nerve blocks from November 2001 through July 2002. (*Id.* at 446-60.) However, Plaintiff continued to experience testicular and/or groin pain, and on August 27, 2002, Plaintiff's right testicle was removed by Dr. Ohl at the University of

6

Michigan to attempt to resolve the pain. (*Id.* at 475-76.) On a follow-up visit to Dr. Ohl, it was noted that Plaintiff's testicular pain had disappeared, but the "groin pain which [Plaintiff] also complained of early on is persistent." (*Id.* at 183.) Following that visit, Plaintiff continued to seek treatment to resolve his ongoing groin pain, including consulting with specialists at the University of Michigan Multidisciplinary Pain Clinic and the Cleveland Clinic. (*Id.* at 239, 502.)

The crux of Plaintiff's argument is that the condition for which he was treated in March 2001, which Plaintiff characterizes as a spermatocele and pain from post-vasectomy recovery, is different from and is unrelated to the disability for which he claimed benefits, *i.e.* damage to the ileal inguinal nerves resulting in groin pain. In particular, Plaintiff contends that these conditions are anatomically distinct because a spermatocele is a cyst adjacent to the testis, a different part of the anatomy than the groin and the site of the vasectomy. Plaintiff argues that he should not be denied benefits merely because he was treated during the Limitations Period for issues occurring in the same general anatomical region as the pain that causes his claimed disability.

First, the record indicates that the spermatocele was not anatomically distinct from the vasectomy. Plaintiff's physician that found the spermatocele noted that it was "at the distal cut of the vasectomy." (*Id.* at 298.)

Second, Plaintiff ignores the evidence in the record indicating that Plaintiff's testicular and groin pain started *before* treatment of the spermatocele in March 2001, and was not

resolved by removal of the spermatocele. Plaintiff would have the Court conclude that Plaintiff's nerve damage was caused by something other than the vasectomy and its resulting complications. However, Plaintiff does not point to any evidence in the record indicating that the cause of this nerve damage is unrelated to the vasectomy or to the pain that Plaintiff experienced immediately following the vasectomy. To the contrary, Plaintiff's own physicians appear to have assumed that Plaintiff's nerve damage was related to the vasectomy. Long after the Limitations Period, as Plaintiff sought further treatment for his testicular and groin pain from 2001 to 2004, it was noted by Plaintiff's physicians that Plaintiff's pain started immediately after his vasectomy (R. at 292, 353-55, 446, 459, 471, 502), and was thought to be related to his vasectomy (R. at 197, 207, 235, 283, 353, 355, 360, 365, 372, 502).

> For example, Dr. Blix noted on September 10, 2001, that:
>
> [Plaintiff] underwent bilateral partial vasectomy in January of this year . . . . He subsequently developed chronic pain and discomfort in the right testicle area. He was referred to Dr. Alkema, who then subsequently removed a granuloma in the office in March. He states that the pain never completely went away, and he continues to have pain and discomfort in the right testicle area. . . .

(R. at 171.) In a letter dated May 30, 2003, Dr. Green at the University of Michigan noted that Plaintiff has "a long history of genitofemoral neuralgia, all stemming from a vasectomy he had multiple procedures for." (R. at 235.) In progress notes dated July 9, 2004, Dr. Salim Hayek at the Cleveland Clinic noted that:

> [Plaintiff] presents . . . for the evaluation of his right inguinal pain. . . . The symptoms began 3 year(s) ago after a vasectomy 1/01. Per patient - the procedure was prolonged

>  and involved a lot of "tugging" . . . . He initially felt significant pain in the right testicle. Also states that right after the vasectomy - he noted pain in the R supra-inguinal region, with worsening pain during the next 2-3 months. . . . His right testicular pain continued until he underwent an epididymectomy 10/01, which completely resolved the testicular pain. However, the supra-inguinal pain continued.

(R. at 502.) If Plaintiff's own doctors assumed that there was a connection between the vasectomy and Plaintiff's ongoing groin pain, it was not arbitrary and capricious for the plan administrator to draw the same connection. In other words, it was not arbitrary and capricious for the plan administrator to conclude from the record that Plaintiff's claimed disability, *i.e.* pain resulting from ileal inguinal nerve damage, was "caused by or contributed to by, or result[ed] from" a condition that arose prior to the Limitations Period and that was treated during that period.

For the foregoing reasons, the Court will affirm the decision of the plan administrator to deny Plaintiff's claim for long-term disability benefits. Because the Court affirms the administrative decision, Defendants' motion for partial summary judgment will be denied as moot.


Date:   April 3, 2009             /s/ Robert Holmes Bell
                                  ROBERT HOLMES BELL
                                  UNITED STATES DISTRICT JUDGE